## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

**INTRODUCTION AND AGENT'S BACKGROUND**

1. I, Jeff James, am a Special Agent with IRS-CI and have been since January 2006. I am currently assigned to the Salt Lake City, Utah, post of duty for the Phoenix Field Office. I have received extensive training in financial investigative techniques. My responsibilities include investigations of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), Money Laundering Statutes (Titles 31 and 18, United States Code) and violations of other federal statutes. Prior to being a Special Agent with IRS-CI, I was employed by the IRS as a Revenue Agent; in that capacity I audited individual, partnership, and corporate tax returns.

2. I have personally conducted or participated in numerous search warrants on businesses, professional offices, residences, and vehicles. Materials I have searched for include business records, bank records, currency and other monetary instruments, and other documents evidencing the obtaining, secreting, and/or concealing of assets by individuals or business entities. These items have also included documents, records, and proceeds of the sale of illegal narcotics.

3. I have been involved with the Organized Crime Drug Enforcement Task Force (OCDETF) during my career as a Special Agent. In this capacity, I have been involved

in several large-scale narcotics and money laundering investigations.  As a result of my involvement in income tax and money laundering investigations, I have gained substantial experience in tracing the proceeds of illegally derived income and in documenting unreported income utilizing specific and indirect methods of reconstructing income.  I have worked extensively with other law enforcement officers who specialize in drug investigations and white-collar crime investigations.  I have debriefed numerous defendants, witnesses, informants, and other persons who have had personal experience and knowledge of the accumulation, spending, and concealing of the proceeds of legal and illegal activities.

4.      I am the lead investigator in this investigation that is the subject of this affidavit and I am completely familiar with the facts outlined below.  This knowledge comes, in part, from my personal participation in the investigation.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included each and every fact known to me concerning this investigation.

5.      To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through Special Agents, other law enforcement officers, and other IRS Agents who participated in this investigation, my review of the documents discussed herein, investigative reports, and reliable law Enforcement sources, including consultation with law enforcement officers from other agencies, and I believe it to be true.

6.      This affidavit is pursuant to an ongoing IRS-CI investigation being worked in the District of Utah.

**JURISDICTION**

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PREMISES TO BE SEARCHED**

8.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following locations:  The premises to be searched are more fully described in **Attachment A (Location to be Searched)** entitled "Description of the Premises to be Searched" incorporated herein by this reference for certain things particularly described in **Attachment B (Items to be Seized)**.  This request for the issuance of this search warrant is made in connection with an ongoing investigation by the United States Department of the Treasury, Internal Revenue Service - Criminal investigation (IRS-CI).

9.      I make this affidavit based in part on personal knowledge gathered during my participation in this investigation, and in part, upon information and belief. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. During this investigation, I

reviewed numerous documents, records, and other evidence, done surveillance, and spoke to and consulted with other agents and/or representatives from law enforcement and regulatory agencies. The facts presented in this affidavit were obtained from these sources.

## BACKGROUND INFORMATION

### JRJ SERVICE INC

10. JRJ SERVICE INC started in 1973 and has been a corporation since it first started.  JRJ SERVICE INC is located at 57 E River Road, Duchesne, UT 84021.  JRJ SERVICE INC is a trucking company and also owns and operates a sand and gravel pit. JRJ SERVICE INC sometimes leases some of its trucks to contractors.

### Form 941

11. Employers use Form 941 to:  **Report income taxes, Social Security tax, or Medicare tax withheld from employee's paychecks** and to pay the employer's portion of Social Security or Medicare tax.  Who must file Form 941.  Generally, **any person or business that pays wages to an employee** must file a Form 941 each quarter (i.e. every three months) and must continue to do so even if there are no employees during some of the quarters.

### Form 940

12. Form 940 is used to report employer's annual Federal Unemployment Tax Act (FUTA) tax.  Together with state unemployment tax systems, the FUTA tax provides

funds for paying unemployment compensation to workers who have lost their jobs. Most employers pay both a federal and a state unemployment tax.  Only employers pay FUTA tax.

13.     Each year, every business with employees must file Form 940 to compute the amount of unemployment tax that must be paid on the federal level.  This payroll tax is based on the first $7,000 of wages of each employee (including owners of S corporations who receive a salary for work performed for their businesses).

## STATUTORY AUTHORITY

14.     As a result of my training and experience, I know that, under the laws of the United States, it is a criminal offense:

- To willfully fail to collect or truthfully account for and pay over any tax when required to do so pursuant to 26 U.S.C. § 7202.

## FACTS ESTABLISHING PROBABLE CAUSE

15.     The purpose of this affidavit is to set forth facts supporting probable cause to believe the owner/operator **(i.e. KIM C. BIRD** of **JRJ SERVICE INC)** has not paid employment taxes since before 2010.  By failing to report and pay over these taxes, **KIM BIRD and JRJ SERVICE INC** are in violation of **26 U.S. Code § 7202 - Willful failure to collect or pay over tax.**

16.     Your Affiant received information that JRJ SERVICE INC had not filed its Employment Tax Returns (i.e. Forms 941s and Forms 940s) since before 2010.  Your

Affiant reviewed IRS records and verified that JRJ SERVICE INC had not filed its Employment Tax Returns since before 2010.

**Interview with KIM BIRD**

17. On September 21, 2022, Your Affiant and another Agent interviewed KIM BIRD at the business location of JRJ SERVICE INC. During the interview, Manager, who KIM BIRD provided the following information about JRJ SERVICE INC's business practices and/or made the following statements:

- KIM BIRD stated that she started working for JRJ SERVICE INC in October of 1994 and became the office manager and started doing the books when her mom became the county recorder.

- KIM BIRD said she is the one who prepares the W-2s for JRJ SERVICE INC and no accountant or CPA is involved in preparing them.

- KIM BIRD stated that she uses QuickBooks to prepare W-2s for JRJ SERVICE INC's employees. KIM BIRD stated that QuickBooks calculates the employees' withholdings.

- JRJ SERVICE INC currently has 7 full time employees and 1 part time employee. The gravel pit has 2 full time employees currently.

- KIM BIRD said that she is aware that she is required to file Form 941s for JRJ SERVICE INC but has not filed them in quite a while.

- KIM BIRD said she could not tell us why the Form 941s haven't been filed. KIM BIRD cannot remember the last time she filed Form 941 for JRJ SERVICE INC. KIM BIRD thinks that the last time she filed a Form 941 for JRJ SERVICE INC was around the time the IRS went electronic with them.

- KIM BIRD stated that she is responsible for filing Forms 941 for JRJ SERVICE INC and for paying over the employee tax withholdings. She stated that she has not paid over the withholdings for many years.

- KIM BIRD was asked if any employees have ever come to her to question why wages don't show up on their Social Security or about any tax issues.  KIM BIRD stated that no employees have ever asked her about that probably because she has never had anyone retire since she has been there.

- KIM BIRD understands that JRJ SERVICE INC's employees aren't getting credit for their wages with Social Security.
- KIM BIRD told said that she believes that JRJ SERVICE INC has QuickBooks back to 2014 and maybe further back.

- BIRD stated that she gives her CPA copies of JRJ SERVICE INC's W-2s, accounts receivable, accounts payable, expense summary all printed from QuickBooks along with the starting and ending bank balances for the business to prepare the corporate tax returns.

18.     Your Affiant saw a computer on KIM BIRD's desk at JRJ SERVICE INC along with various paper documents.

**IRS SUMMONS issued to JRJ SERVICE INC**

19.     On or about December 13, 2022, an IRS Summons was sent to JRJ SERVICE INC via certified mail for its corporate records/information.   KIM BIRD signed USPS Domestic Return Receipt – Article Number 7021 0350 0002 0597 6289 on December 21, 2022.  The Summons documents/information was due January 4, 2023.

**First Phone Call to follow-up on SUMMONS**

20.     On January 31, 2023, at approximately 10:05 a.m., your Affiant called KIM BIRD on her cell number (435) 738-5707 regarding the Summons for JRJ SERVICE INC's records.  The following was said/discussed on this phone call:

- KIM BIRD at first told your Affiant that she didn't receive a Summons and your Affiant told her that she signed for the Certified Mail which contained the Summons on December 21, 2022.

- KIM BIRD told your Affiant that she would look and get me the records.

- Your Affiant told KIM BIRD to call if she could not locate the Summons and/or if she had questions on what records were needed.

- Your Affiant told KIM BIRD that the records were past due and were due January 4, 2023.

**Second Phone Call to follow-up on SUMMONS**

21.    On February 24, 2023, at 10:35 a.m., your Affiant called KIM BIRD on her cell - (435) 738-5707.  The following was said/discussed on this phone call:

- Your Affiant told BIRD that he was following up on the records that were Summonsed from her corporation.

- BIRD asked if your Affiant could send her what records were needed.  Your Affiant told BIRD that he could send the attachment for the records needed but he would need to remove the corporation's name due to PII.

- Your Affiant briefly went over what records he needed from the corporation.

- BIRD provided her email address - jrjservice@ubtanet.com.

- Your Affiant asked BIRD to let him know that she received the attachment.

- Your Affiant asked BIRD if she could get the records to him next week (i.e. February 27th to March 3rd) and she said that she could.

- KIM BIRD said that she would be going out of town Wednesday, March 3rd, until the following Monday, March 6th, because she was going on a short trip.  BIRD said that she should be able to mail the corporate records before she goes out of town.

- Your Affiant sent an email to KIM BIRD at jrjservice@ubtanet.com at 10:42 a.m. (right after the phone call ended) with the Attachment For Corporate Records that was included with the Summons that was previously sent to her on or about December 13, 2022 that stated what records were needed for JRJ SERVICE INC.

8

- KIM BIRD replied back at 11:53 a.m. stating - "I received it.  Thank you".

### Third Phone Call to follow-up on SUMMONS

22. On March 15, 2023, your Affiant called KIM BIRD on her cell - (435) 738-5707 at 1:08 p.m.  The following was said/discussed on this phone call:

- Your Affiant told BIRD that he was following up on the records that were Summonsed from her corporation.

- BIRD stated that she has been working on getting the records together and she will be sending some of them this week.

- BIRD stated that she will continue working on getting the records.

### SUMMONSED Records Never Received

23. As of July 14, 2023, your Affiant has not received any corporate records from KIM BIRD for JRJ SERVICE INC and has not heard back from her.  Your Affiant has given KIM BIRD an additional 6 months to provide that records for JRJ SERVICE and she has failed to respond to the Summonsed documents/information.

### JRJ SERVICE INC's Forms 1120

24. Your Affiant has reviewed JRJ SERVICE INC's corporate tax returns (Forms 1120) that shows the total amounts of employees' wages for each year from 2010 to 2020.  Employees' wages can be included under three areas – Compensation of Officers, Salaries & Wages and Cost of Labor listed under Cost of Goods Sold.  The below table shows the Total Wages paid by JRJ SERVICE INC from 2010 to 2020:

**EMPLOYEES' WAGES REPORTED ON JRJ SERVICE INC's CORPORATE TAX RETURNS**

| Year | Compensation of Officers - Per Return | Wages - Per Return | COGS - Cost of Labor – Per Return | Total Wages |
|---|---|---|---|---|
| 2010 | $ 72,800.00 | $ 230,996.00 | $ 0.00 | $ 303,796.00 |
| 2011 | $ 74,200.00 | $ 228,998.00 | $ 0.00 | $ 303,198.00 |
| 2012 | $ 72,800.00 | $ 366,215.00 | $ 0.00 | $ 439,015.00 |
| 2013 | $ 86,550.00 | $ 390,743.00 | $ 0.00 | $ 477,293.00 |
| *2014* | *$ 85,800.00* | *$ 351,883.00* | *$ 0.00* | *$ 437,683.00* |
| *2015* | *$ 87,450.00* | *$ 320,503.00* | *$ 0.00* | *$ 407,953.00* |
| *2016* | *$ 0.00* | *$ 343,517.00* | *$ 0.00* | *$ 343,517.00* |
| *2017* | *$ 0.00* | *$ 518,637.00* | *$ 0.00* | *$ 518,637.00* |
| 2018 | $ 0.00 | $ 592,548.00 | $ 0.00 | $ 592,548.00 |
| 2019 | $ 0.00 | $ 523,425.00 | $ 0.00 | $ 523,425.00 |
| 2020 | $ 0.00 | $ 368,771.00 | $ 0.00 | $ 368,771.00 |
| 2021 | **Return not filed yet** | **Return not filed yet** | **Return not filed yet** | **Return not filed yet** |
| 2022 | **Return not filed yet** | **Return not filed yet** | **Return not filed yet** | **Return not filed yet** |

25. JRJ SERVICE INC's Corporate Returns for the following years (i.e. 2014, 2015, 2016 & 2017) were prepared by JRJ SERVICE INC's CPA but were not filed with the Internal Revenue Service. The wage figures on those respective returns (i.e. 2014, 2015, 2016 & 2017) that were prepared by the CPA were used in the above table. JRJ SERVICE INC's Corporate Returns for 2021 and 2022, respectively, have not been prepared or filed to date.

26. KIM BIRD has knowledge of the employment taxes because she is deducting them as an expense on JRJ SERVICE INC's corporate tax returns.

**Elements of 26 U.S.C. § 7202**

There are three elements to a criminal charge under 26 U.S.C. § 7202:

First, the individual had a duty to collect, and/or truthfully account for, and/or pay over a tax,

Second, the individual failed to collect, or truthfully account for, and/or pay over the tax, and

Third, the individual did so willfully.

# COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

1. As described above and in **Attachment B (Items to be Seized)**, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

2. I request permission to only search computers that are linked to the business. Specifically, computers that are used at JRJ SERVICE INC to conduct business for JRJ SERVICE INC. Agents will endeavor to identify only computers that are used for business purposes and search/image those computers. Personal computers/ipads that are not linked to the business or used for business purposes will not be searched/imaged.

3.  *Probable cause.*  I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form

      of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

   d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

   e. Based on actual inspection of other evidence related to this investigation, spreadsheets, financial records, invoices, I am aware that computer equipment was used to generate, store, and print documents used in the tax evasion scheme. There is reason to believe that there is a computer system currently located on the PREMISES.

4. *Forensic evidence.* As further described in **Attachment B (Items to be Seized)**, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a

13

word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The

existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or

exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

5. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is

exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

6. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information

consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

7. JRJ SERVICE INC ("the Company") is a functioning company that conducts legitimate business. The seizure of the Company's computers may limit the Company's ability to conduct its legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption.  If employees of the Company so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the Company's legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

## **CONCLUSION**

Based on the foregoing, I submit that there is probable cause to believe that KIM BIRD and JRJ SERVICE INC are committing violations of 26 U.S.C. § 7202 (Failure to Collect or Pay Over Tax); and that the items to be seized described in **Attachment B (Items to**

**be Seized)** which are fruits, instrumentalities and/or evidence of violations of federal criminal laws will be found at the subject premises described in **Attachment A (Location to be Searched)**.

Respectfully submitted,

*Jeff James*

Jeff James, Special Agent IRS-CI

Sworn to before me under electronic means under Rule 4.1a and singed electronically on this 17th day of July 2023, at 3:15 p.m.

*Daphne A. Oberg*

THE HONORABLE DAPHNE A. OBERG
UNITED STATES MAGISTRATE JUDGE